UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHEETAH MINER USA INC.,

Plaintiff,

Case No. 23-cv-10812
Hon. Linda V. Parker

v.

19200 GLENDALE, LLC, *et al*.,

Defendants.
_________________________________/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND TO AMEND JUDGMENT (ECF No. 68)**

On September 8, 2025, this Court issued an opinion and order ("Order") granting Defendants' motion for summary judgment (ECF No. 60) as to Count II of Plaintiff's Amended Complaint — Breach of Contract under Michigan Law — and denying Plaintiff's motion for summary judgment as to the same count. Accordingly, the Court dismissed with prejudice Count II of Plaintiff's Amended Complaint. In response, Plaintiff timely filed a motion for reconsideration regarding dismissal of Count II. (ECF No. 68.) For reasons outlined hereinafter, Plaintiff's motion for reconsideration is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a commercial tenant and landlord dispute. Plaintiff Cheetah Miner USA, Inc., a Bitcoin mining manufacturer, contracted with

Defendants 19200 Glendale, LLC and Joseph Caradonna, to lease 23,150 square feet in Defendant 19200 Glendale, LLC's 200,000 square foot industrial building located in Detroit, Michigan. On April 1, 2022, the parties' executed lease agreement ("Lease Agreement" or "Lease") went into effect, with an outlined term of sixty months to expire in March of 2027. Plaintiff asserts two claims against Defendants: (Count I) violation of Michigan's Anti-Lockout Statute, Mich. Comp. Laws § 600.2918(2) and (Count II) breach of contract under Michigan state law. The Court will only focus on Count II in this opinion.

The first page of the Lease Agreement provides Plaintiff would "use the Demised Premises for crypto currency mining equipment for the verification and production of Bitcoin and other lawful purposes directly related to verification and production of Bitcoin." (ECF No. 49-1 at PageID.1777.) But Plaintiff argues it could not fully use the leased premises for that purpose after Defendants "materially changed the electrical capacity available for Plaintiff's use as of February 7[, 2023]" — which was the last date Plaintiff had electricity available for mining. (ECF No. 49 at PageID.1771.) Plaintiff states when it contacted, DTE, the energy provider, it was told this was the "stop service date" and another person was responsible for the electrical service cutoff. (*Id.*) From Plaintiff's perspective, this occurred after "tensions developed between the parties at the end of 2022." (ECF No. 49 at PageID.1770.)

To remedy the issue, Plaintiff initiated this lawsuit against Defendants. (ECF No. 1.) Plaintiff then amended its complaint (ECF No. 49) after receiving permission from this Court, and Defendants answered and filed a counterclaim (ECF No. 52) for breach of contract and declaratory relief, alleging Plaintiff first breached by failing to pay rent and utilities and failing to install a sub-meter and provide proof of insurance. Shortly thereafter, Defendants filed a motion for summary judgment (ECF No. 60) on their breach of contract counterclaim. Plaintiff filed a cross-motion for partial summary judgment on Counts I and II of its Amended Complaint (ECF No. 63.)

After reviewing the full record and briefings[1] this Court granted in part and denied in part Defendants' motion for summary judgment (ECF No. 60) and granted in part and denied in part Plaintiff's motion for partial summary judgment (ECF No. 63). (*See* ECF No. 67.) More specifically, this Court: granted summary judgment to Defendants as to Count II of Plaintiff's Amended Complaint and denied Plaintiff's motion for summary judgment as to Count II. Dissatisfied with this Court's ruling on Count II of Plaintiff's Amended Complaint, Plaintiff filed a motion for reconsideration.

---

[1] This Court waived oral argument pursuant to Local Rule 7.1(f) after finding that it would not aid in the disposition of the case. (See ECF 67.)

## II. LEGAL STANDARD

Plaintiff's motion seeks review of an "interlocutory order" — a non-final order and cites its reliance on "Fed.R.Civ.P.54(b), 59(e), 60(b), and L.R. 7.1(h)." (*See* ECF No. 68 at PageID.2854.) Because this Court's Order did not dismiss all of Plaintiff's claims nor issue a final judgment or otherwise close the case, the Court's Order was not final. *See Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 327 (6th Cir. 2018) ("A decision is final for the purposes of [28 U.S.C.] § 1291 if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945))). Plaintiff can only proceed with its motion under Local Rule 7.1(h)(2). Federal Rules of Civil Procedure 59(e) and 60(b) are inapplicable.

Though "disfavored," Rule 7.1(h)(2) provides that parties can file a motion for reconsideration of non-final orders within fourteen days after entry of an order. E.D. Mich. LR(h)(2). Motions for reconsideration may succeed on only three grounds: (1) the "court made a mistake" based on the law before the court at the time of its previous decision and "correcting the mistake changes the outcome of the prior decision"; (2) "[a]n intervening change in controlling law warrants a different outcome"; or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior

decision." E.D. Mich. LR(h)(2). In filing its motion for reconsideration, Plaintiff does not allege any new facts or changes in controlling law but advances the same arguments this Court previously declined. Thus, Plaintiff appears to proceed under the first prong.

To prevail under this basis, the movant must show the following: "(1) that the court made a mistake, (2) that correcting the mistake changes the outcome of the prior decision, and (3) that the mistake was based on the record and law before the court at the time of its prior decision." *Hillman Power Co. v. OnSite Equip. Maint., Inc.*, 582 F. Supp. 3d 511, 514 (E.D. Mich. 2022) (citing E.D. Mich. LR 7.1(h)(2)(A)). Moreover, such motions are not means for parties "to re-hash rejected arguments" or advance new ones. *See Saltmarshall v. VHS Children's Hosp. of Mich., Inc.*, 402 F. Supp. 3d 389, 393 (E.D. Mich. 2019) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

## III. ANALYSIS

Plaintiff's motion argues this Court "erred by ruling *sua sponte*" on three issues, "meaning . . . this was Plaintiff's first chance to respond." (ECF No. 68 at PageID.2853.) Plaintiff alleges the Court 1) relied on language in Section 2(A) of the Lease that "Defendant[s] did not rely on in its summary judgment briefs and which does not apply"; 2) "[o]verlook[ed] language supporting Plaintiff in Section 9 and 10(d) that Defendant[s] did not present for argument and . . . was not

addressed by Plaintiff"; and 3) "[r]eject[ed] [its] quiet enjoyment claim as waived even though the complaint fairly states the claim, [and] it was specifically pled as an affirmative defense." (*Id.*) The Court will address each contention below.

**A. Section 2(A)**

The Court did not err when reviewing the record, including the terms of the Lease Agreement, to determine that Defendants did not breach the contract. A district court is not required to sift through the entire record for facts that may or may not support the nonmoving party's claim on summary judgment. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989). At the same time, looking at the evidence in the entire record can be a helpful step in ensuring precise judgments are made, regardless of whether a certain party did or did not offer certain facts contained within the record to bolster their argument.

Plaintiff's primary, and underwhelming, support for its breach of contract claim against Defendants is that it "took the Premises 'as is.'" (ECF No. 49 at PageID.1770.) And further, that when it took the space, "it had sufficient electrical capacity for Plaintiff's needs." (*Id.*) Given this contention, this Court looked at Section 2(A), the provision in the Lease which contains the "as is" clause, to understand why Plaintiff grounded its breach of contract argument on this provision in its Amended Complaint, response brief to Defendants' motion for summary judgment (ECF No. 62), motion for partial summary judgment (ECF No.

63), and reply in support of Plaintiff's motion for summary judgment (ECF No. 66).

The plain language of the Lease Agreement does not aid Plaintiff's argument that Defendants breached the contract because the electrical capacity of the leased premises changed nearly a year after the parties executed an "as is" Lease. The Lease clearly states that the "[t]enant waives any implied warranty that the Premises or Project are suitable for Tenant's intended purposes. TENANT ACKNOWLEDGES THAT (1) AS OF THE DATE IT ACCEPTS POSESSION OF THE PREMISES IT SHALL HAVE INSPECTED AND ACCEPTED THE DEMISED PREMISES IN AN 'AS IS, WHERE IS' CONDITION." (ECF No. 60-3 at PageID.2209.) Section 2(A) expressly protects Defendants from the claim for which Plaintiff asserts they are liable. (*See* ECF No. 60-3 at PageID.2209 ("Landlord has made no representation or warranty as to the suitability of the premises or the project for the conduct of the tenant's business, and tenant waives any implied warranty that the premises or project are suitable for tenant's intended purposes.").)

The term "as is" means the "existing condition without modification." Black's Law Dictionary (12 ed. 2024). Also, an "as is" clause relating to the purchase of property means "the property is sold in its existing condition, and use of the phrase *as is* relieves the seller from liability for defects in that condition."

*Id.* An "as is" clause is common in commercial lease agreements, i.e., the tenant takes the property how it comes. The clause is also "persuasive evidence that the [lessee] assumed the risk of loss." *Coosard v. Tarrant*, 995 N.W.2d 877, 886 (Mich. Ct. App. 2022) (citing *Lenawee Co Bd of Health v. Messerly*, 331 N.W.2d 203 17, 207-10 (1982)). However, the burden of risk due to an "as is" clause does not shift to the tenant when they can show the lessor made fraudulent representations before binding themselves into an agreement. *Id.*

Plaintiff does not allege that the property obtained was fraudulently misrepresented by Defendants nor does the record support that assertion even if it was made. Instead, what the record does show is that Plaintiff had access to electricity for nearly a year into its sixty-month lease term. Plaintiff contends that after this passage of time is when the property changed from "as is." Based upon the record and the explicit language in the Lease Agreement, the property was delivered "as is" to the Plaintiff when it took possession, which included available electricity, but its access to such utility changed after Plaintiff and Defendants had disagreements.

Plaintiff and Defendants entered into an agreement in which Defendants understood that the business conducted by Plaintiff would consume electricity. The "as is" language in the Lease Agreement is not a warranty or ongoing guarantee of certain conditions throughout the lease term. Contrary to Plaintiff's

belief, the "as is" clause in the Lease Agreement is not indicative of a perpetual entitlement to any particular level of electricity throughout the lease term. Instead, the "as is" clause waived the implied warranty of suitability. Plaintiff knew its business and that its electrical needs would possibly increase overtime. Therefore, when it took the leasehold "as is," it contractually knew that the landlord would not be liable if the leasehold became unsuitable for Plaintiff's intended use.

Having read the plain language of the Lease Agreement as to Section 2(A) and understanding the "as is" clause only required Defendants to deliver the property in "as is" condition, the Court finds, again, that the Plaintiff failed to show that Defendants breached the contract.

**B. Section 9 and 10(d)**

The Court did not overlook Section 9 or Section 10(d) of the Lease Agreement. It would be careless for this Court to look at some of the terms of the Lease, i.e., Section 2(A), and not read the entire agreement. In fact, the Court found Section 9 persuasive to prove the Lease clearly placed the responsibility on Plaintiff to be "responsible for all utility costs, specifically electrical, used for Tenant's Use and for the Premises." (ECF No. 60-3 at PageID.2215-17.)

As for Section 10(d), this Court reiterates its original position: Section 10(d) "suggests that the parties contemplated changes in the availability of electrical service and that [Defendants] would not be liable for any interruption of that

service." (ECF No. 67 at PageID.2833-2834.) The Lease is unambiguous: there was no obligation under the Lease for Defendants to maintain the Property in any condition. Accordingly, Section 9 and Section 10(d) do not support that Defendants breached the Contract.

**C. Quiet Enjoyment**

The Sixth Circuit has consistently held that parties cannot expand their claims and assert new theories at the summary judgment stage of litigation. *See Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) ("Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing."); *Alexander v. Carter*, *733 F. App'x* 256, 265 (6th Cir. 2018); *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 665-66 (6th Cir. 2012) (holding that a plaintiff is not "entitled to liberal construction of [its] complaint to include new theory raised for first time at summary judgment stage"); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (noting that once a case reaches the summary judgment stage, a plaintiff cannot raise a new claim in their response to a summary judgment motion (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004))). In *Gilmour*, the Eleventh Circuit held that a plaintiff could not raise a new claim through argument in a brief

opposing summary judgment and that the proper procedure for plaintiffs to assert a new claim at that stage is to amend the complaint through Federal Rule of Civil Procedure 15(a). *Id.*

In Plaintiff's First Amended Complaint, Count II is labeled as "BREACH OF LEASE." (ECF No. 49 at PageID.1773.) Plaintiff specifically states:

> 46. Plaintiff incorporates all previous allegations. 47. Defendant 19200 Glendale, LLC modified the Premises although not permitted to do so under Section 2(A) of the Lease. 48. As modified, Plaintiff is unable to use the Premises for their intended use. 49. Defendant 19200 Glendale, LLC failed to pay invoices from Plaintiff related to electrical bills that Plaintiff paid but which Defendant 19200 Glendale, LLC was partially responsible for. 50. Defendant 19200 Glendale, LLC's actions constitute a breach of the Lease. 51. As a proximate result, Plaintiff suffered the damages described above.

*(Id.)* A reading of the complaint makes clear that Plaintiff attributes its inability to use the premises for its intended purpose to the modifications allegedly made in violation of Section 2(A) of the Lease Agreement. Paragraph 47 identifies the alleged breach of Section 2(A). Paragraph 48 begins with "[a]s modified," expressly linking Plaintiff's inability to use the premises for its intended purpose to the modifications identified in Paragraph 47. Thus, read together, Paragraphs 47 and 48 present a causal chain: because of modifications not permitted by 2(A) of the Lease Agreement, Plaintiff could not use the premises for its intended purpose.

The first time Plaintiff referenced any breach of the covenant of quiet enjoyment was in its answer as an affirmative defense to Defendants'

counterclaim. (*See* ECF No. 56 at PageID.1979 ("19200 Glendale's claims are barred by the doctrine of constructive eviction and failure of quiet enjoyment.").) However, an affirmative defense is not a claim for relief. *Driver v. Pro Ag Mgmt., Inc.*, 320 F. Supp. 3d 954, 955 (M.D. Tenn. 2018); s*ee also Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 107 (D.C. Cir. 2016) ("Under Federal Rule of Civil Procedure 8(c), however, affirmative defenses made '[i]n respon[se] to a pleading' are not themselves claims for relief.") An affirmative defense simply challenges relief sought in a complaint. *See Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-11536, 2013 WL 173268 at *12 (E.D. Mich. Jan. 16, 2013). In this case, Plaintiff is using the covenant of quiet enjoyment as a shield to Defendants' counterclaim, so it cannot later claim to be using it as a sword.

Plaintiff also mentioned it in its response brief to Defendants' motion for summary judgment. (*See* ECF No. 62 at PageID.2350 (arguing that Defendants breached the lease and the principle of the right to beneficial enjoyment exists in landlord-tenant cases).) Plaintiff never mentioned a breach of the covenant quiet enjoyment as a theory of breach of contract in its initial or Amended Complaint. Nor did Plaintiff mention breach of covenant of quiet enjoyment as the basis for its breach of contract claim in its own Motion for Partial Summary Judgment (ECF No. 63).

To the extent that Plaintiff argues that it was not required to specifically plead a claim for breach of covenant of quiet enjoyment because that claim was subsumed in the breach of contract claim, it is wrong. A breach of covenant of quiet enjoyment claim would be a new theory of liability, and Plaintiff certainly cannot raise a new theory of liability under a breach of contract claim in its response brief to Defendants' motion for summary judgment. *See TB Farms Wellington, LLC v. Columbia Gas Transmission Co., LLC*, No. 1:22-CV-720, 2025 WL 1928935, at *11-13 (N.D. Ohio July 14, 2025) (dismissing plaintiff's claim asserting a new theory of contract liability because plaintiff did not first move to amend its pleading to assert such liability but first raised it in its motion for summary judgment).

In *TB Farms Wellington*, the Northern District of Ohio court noted how the plaintiff asserted a breach of contract claim based on breach of covenant of quiet enjoyment and unauthorized access to property in its first amended complaint. *Id.* at *11. Then, in its motion for summary judgment, the plaintiff tried to expand its breach of contract claim by raising a new theory of liability: breach of implied covenant to restore the surface claim. *Id.* The court observed that nowhere in the breach of contract claim or remainder of the pleadings did plaintiff mention an implied covenant to restore the surface or an assertion that defendant was liable for breach of contract for failing to repair the surface of the leasehold. *Id.* at *12.

Since plaintiff first mentioned the new theory of liability in its motion for summary judgment, the court dismissed any claim for breach of contract based on the implied covenant to restore the surface. *Id.* The facts of this case compel the same conclusion. If a breach of contract claim based on breach of covenant of quiet enjoyment was clearly marshalled by Plaintiff in its Amended Complaint, the Court's analysis would be different, but it was not.

Plaintiff then argues if "Federal Rules require Plaintiff's complaint to specify a claim for quiet enjoyment, Plaintiff would certainly be permitted to amend the complaint [pursuant to Rule 15(a)(2)]." (*See* ECF No. 68 at PageID.2867.) They further argue that if Defendants object to a request for leave to amend under Rule 15(a)(2), they could amend under Rule 15(b) — Amendments During and After Trial. (*Id.* at PageID.2868.) Plaintiff relies on *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992) for support, arguing that the Sixth Circuit "allowed a party to raise an affirmative defense for the first time on summary judgment, relying on Rule 15(b), noting that the objecting party 'failed to demonstrate prejudice.'" (*Id.* at PageID.2868-69.) In *Transworld Systems*, the defendant raised a defense for the first time in its motion for partial summary judgment after not pleading it in its answer. *Transworld Systems, Inc.*, 953 F.2d at 1030. The district court allowed the defense because it found plaintiff would not be prejudiced since they had ample opportunity to rebut the use of the

affirmative defense and because plaintiff fully responded to the merits of the defense. *Id.* The Sixth Circuit affirmed because plaintiff's engagement with the unpled defense in the summary judgment briefing was evidence that they were not prejudiced. *Id.* Those facts are significantly dissimilar to the present case. Here, neither Defendants nor Plaintiff substantively argued the issue of breach of quiet enjoyment under Plaintiff's breach of contract claim in their summary judgment briefs.

Rule 15(b) is the incorrect rule since "[b]y its plain terms, Rule 15(b)[] only applies to claims that are tried." *See McColman v. St. Clair Cnty.*, 479 F. App'x 1, 6 (6th Cir. 2012). In *McColman*, the Sixth Circuit affirmed the district court's decision to decline to consider a claim that was not pled. *Id.* at 6. The Sixth Circuit held that the absence of prejudice was immaterial given the moving party never formally filed a motion for leave to amend with the district court. *Id.* Rule 15(a)(2) is the correct standard in this case.

The federal judicial system is "'designed around the premise that [parties represented by competent counsel] know what is best for them[] and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 375-36 (2020) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003)). Here, Plaintiff is represented by competent counsel. If Plaintiff sought to pursue a breach of quiet enjoyment theory under a

breach of contract claim, it should have raised that argument in its Amended Complaint. Additionally, Plaintiff could have asked for this Court's leave *again* pursuant to Rule 15(a)(2) (after showing good cause since the deadline in the scheduling order has passed). *See Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

Accordingly, the Court did not err in determining Plaintiff waived the opportunity to assert a theory of liability under its breach of contract claim based on an alleged breach of the covenant of quiet enjoyment.

## IV. CONCLUSION

Consequently, all of Plaintiff's arguments provided in its Motion for Reconsideration as to Count II of its Amended Complaint fail since it was unable to substantiate with any clear evidence that this Court made a mistake. The Court will deny the Motion for Reconsideration (ECF No. 68) under Local Rule 7.1(h)(2)(A).

Accordingly, Plaintiff's Motion for Reconsideration is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 23, 2026